CHARLOTTE PENNINGROTH, Plaintiff, Appellant, v. HENRY PENNINGROTH, Defendant, Appellant.

St. Louis Court of Appeals, November 23, 1897.

Divorce a Vinculo Matrimonii: ALIMONY AND CUSTODY OF MINOR CHILD: EVIDENCE. The evidence in this cause is considered by the court, and *held* that plaintiff was the innocent and injured party, and entitled to a divorce from the bonds of matrimony, to alimony, and the care, custody and control of her minor child.

*Appeal from the St. Louis City Circuit Court.*—HON. SELDEN P. SPENCER, Judge.

REVERSED (*with directions*).

*Lubke & Muench* for plaintiff appellant.

This court is not bound by the finding of the lower court, but will render its own conclusion upon the proof contained in the record. *Griesedieck v. Griesedieck*, 56 Mo. App. 94; *State ex rel. v. St. Louis Court of Appeals*, 99 Mo. 216.

Such acts of alleged shortcomings on the part of the wife, as are in any way substantiated by the evidence, are either too insignificant to be regarded, or were provoked by defendant and his son, and can not defeat plaintiff's recovery, as they furnish no basis for a divorce to the defendant. *Griesedieck v. Griesedieck, supra; Owen v. Owen*, 48 Mo. App. 208, 211; *Hoffman v. Hoffman*, 43 Mo. 547, 551.

Plaintiff being entitled to a divorce, is likewise entitled to the custody of her minor son and to adequate alimony for herself and child out of the ample means of defendant, and alimony is to be guaged by the relative means of the parties, by the fact that the

wife has aided materially in the accumulation of the husband's fortune, and by the gravity of the husband's offense. 2 Bish. Mar. & Div., secs. 369, 445, 446, 465–467; *Becker v. Becker*, 79 Ill. 532; *Hamilton v. Hamilton*, 37 Mich. 603; Tyler on Inf. & Cov. [2 Ed.] 906, 907; *McClung v. McClung*, 40 Mich. 493; *Ressor v. Ressor*, 80 Ill. 442; *Gercke v. Gercke*, 100 Mo. 237.

*Alfred A. Paxon* for defendant appellant.

BLAND, P. J.—Suit on bill and cross-bill for divorce. The bill charges many indignities offered the plaintiff by the defendant, the most serious of which is that the defendant consorted with an alleged disreputable woman, one Rose Ferguson. The cross-bill counted on indignities offered the husband by the wife. The trial court after hearing the evidence dismissed both bill and cross-bill, from which action both parties appealed to this court.

The testimony preserved by the bill of exceptions consists of two hundred and ninety-one pages of typewritten matter. This evidence we have DIVORCE a vinculo matrimonii: alimony and custody of minor child: evidence. carefully read. From it may be fairly deduced the following facts necessary to be noticed in this opinion. At the time of the marriage the husband was a widower, having one son by his former marriage, six or seven years old. The plaintiff was a spinster, about thirty-one years of age. Both were possessed of considerable property. The first few years of their married life were spent on a farm of the husband in St. Louis county. But little evidence was admitted by the court as to their marital relations while on this farm, but from what little was admitted, it does not appear that there was any serious grounds for complaint by either against the other. In 1890 they moved to the city, where the wife's

mother, brother and aunt lived, with whom they lived for a time, after keeping house for a year or so to themselves. The evidence discloses the fact that the husband was neglectful of his wife, gave her but little of his attention, either in sickness or health, and that he was fault-finding and critical about his wife's cooking and the meals she prepared for his table, and his whole conduct shows that his affections for his wife, if he had any, were of the undemonstrative and secret kind, that are imperceptible by the outside world, or by the object of them. The evidence also tends strongly to prove that for several months before the commencement of the suit he was practically living with the Ferguson woman. He was frequently found at the races with her, often at her house in daytime, late in the evening, and seen to leave there early in the mornings, and that in December, 1895, she accompanied him to New Orleans, where they remained five or six weeks, and returned together. These facts, taken in connection with the fact that Mrs. Ferguson was a divorced woman, kept a rented house where the defendant visited her, that she played the races in company with the defendant, and with the further fact that defendant, so soon as he is found visiting Mrs. Ferguson's house, assumed a false name—Henry Williams—by which name he was introduced and known on the race grounds and at Mrs. Ferguson's—tend to prove a more grave offense than is charged against him by the plaintiff. His conduct in this connection, under the most favorable circumstances, was intolerable in the eyes of a virtuous and sensible woman, and such as to destroy her confidence in his loyalty to her and to his marriage vows. Short of open and notorious adultery, the defendant could not have offered his wife a more humiliating indignity, and for this, if for no

other reason, she is entitled to the relief she prays for, unless she has forfeited this right by her misconduct.

The evidence against her comes almost entirely from the defendant and his son Henry (the one by former marriage), and tends to prove that the plaintiff was a poor cook, stingy, cold in her nature, and that she had an aversion to the boy. The principal complaint of the defendant was the failure of the wife to prepare palatable meals, although furnished with the necessary material, or with the money by which it could have been procured. This complaint reaches back to and includes the period of their residence upon the farm in St. Louis county, where the testimony shows they had from three to fifteen work hands employed all the time. None of these were called to corroborate the testimony of the defendant and his son. Some of them must have been within reach of the process of the court and could have been called as witnesses. The fact that they were not called, and that this testimony was contradicted by the plaintiff and other witnesses, warrants us in saying the charge is unproved. The evidence that the plaintiff was miserly, and was constantly scheming to get defendant's property and money in her own right, is not sufficient to prove the charge. It tends to show that plaintiff was close and penurious, and that she did not make the defendant her financial agent or permit him to know much about her private business. She had a right to deal with her own as pleased her, and while her conduct in this regard may have been such as to show a want of confidence in her husband and a desire to keep from him knowledge of her separate property interest, yet this did not constitute an indignity. She but exercised a statutory right in thus dealing with her own, and if it is humiliating to the husband, whose wife owns property in her own right, that she does not

call upon him to manage and control it for her, he must ascribe this humility to the humble position assigned him in such circumstances by the laws of the state.

The evidence also tends to prove the plaintiff was not affectionate, but was cold toward the defendant. Be it so. She had ample cause for this. From the first the defendant was fault-finding, critical and unappreciative, and if by such conduct the affections of his wife grew cold, he alone is to blame for it, and has no right to complain of a condition brought about by his own misconduct. We fail to find evidence to prove any of the indignities set up in the cross-bill. True it is that the conduct of the plaintiff is in many things not commendable, but she was guilty of no misconduct or neglect which could be called an indignity. In short, we think we can safely say from the testimony that she is the innocent and injured party. We think the court should have admitted all the evidence offered by the plaintiff tending to prove the marital relations of plaintiff and defendant prior to 1890. In cases of this kind the whole married life of the parties is often a subject of legitimate inquiry. Especially is this so when, as in this case, it is necessary to inform the court which of the parties was first in fault, and which of the twain by his or her misconduct brought on the first disagreement and trouble. The defendant objected to this testimony, and for this reason we assumed that it would not have benefited him.

Had the evidence left any of the material facts in doubt, we would defer to the finding of the trial court. *Griesedieck v. Griesedieck*, 56 Mo. App. 94. A review of the evidence, however, leaves no doubt in our minds as to the proper disposition to be made of this case. We find that the plaintiff is the innocent and injured party; that she is entitled to be divorced from the

bonds of matrimony heretofore contracted with the defendant; that she is entitled to the care, custody and control of her minor child; that she should be allowed alimony in gross, including counsel fees, in the sum of $2,000, and under the authority of *State ex rel. Dawson v. St. Louis Ct. of Appeals*, 99 Mo. 216, we reverse the judgment of the lower court, with directions to enter up judgment in accordance with the foregoing finding. It is so ordered. All concur.